*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CITY OF WAYNE,

UNPUBLISHED
May 25, 2023

Respondent-Appellant,

v

No. 361449
MERC
LC No. 20-L-1801-CE

WAYNE PROFESSIONAL FIRE FIGHTERS
UNION, LOCAL 1620, INTERNATIONAL
ASSOCIATION OF FIRE FIGHTERS,

Charing Party-Appellee.

Before: CAMERON, P.J., and K. F. KELLY and M. J. KELLY, JJ.

PER CURIAM.

Respondent City of Wayne (the "City") appeals by right the decision of the Michigan Employment Relations Commission ("MERC") affirming and adopting the administrative law judge's ("ALJ") recommendation that an order be issued directing the City to cease and desist violating its duty to bargain in good faith by refusing to participate in arbitration regarding mandatory subjects of bargaining. Finding no errors warranting reversal, we affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

The Charging Party, the Wayne Professional Fire Fighters Union, Local 1620, International Association of Fire Fighters (the "Union"), is comprised of professional firefighters employed by the City. The parties' last collective-bargaining agreement ("CBA") expired on June 30, 2019. The parties have since negotiated a new three-year CBA and reached tentative agreement as to most issues, except for several matters relating to retiree healthcare benefits for current employees upon retirement. The parties agreed to submit that issue to compulsory arbitration under MCL 423.231 *et seq.* (commonly known as "Act 312"). The Union's last settlement offer in the arbitration proceedings proposed a vested, lifetime, unalterable retiree healthcare stipend for its members. The proposed benefit would require the City to make stipend payments for the lifetime of all current bargaining unit members (including their eligible spouses and dependents) who retired during the effective term of the new CBA.

The City opposed the Union's settlement offer and initiated a lawsuit to enjoin the arbitration proceedings on the basis that an Act 312 arbitration panel was without authority to award the lifetime benefit proposed by the Union because it would be payable beyond the expiration of the CBA. The Union subsequently filed an unfair labor practices charge with MERC, reasoning that the City's position was untenable and constituted a refusal to submit to compulsory arbitration regarding a mandatory bargaining subject. The parties agreed to withdraw both the Act 312 arbitration proceedings and the City's court case without prejudice pending resolution of this case.

The ALJ rejected the City's jurisdictional argument and recommended an order be issued directing the City to cease and desist violating its duty to bargain in good faith by frustrating the arbitration process. MERC agreed with the ALJ that a CBA could vest lifetime, unalterable retirement benefits for employees retiring during the term of the agreement. MERC concluded that none of the decisions regarding retiree benefits suggested that a proposal for lifetime benefits was a permissive subject of bargaining or that such benefits should be treated differently than any other mandatory subject. It also disagreed with the City's contentions that the ALJ's decision was inconsistent with the 2011 amendment of Act 312 and that the ALJ erred by citing irrelevant decisions from various Act 312 arbitration panels. MERC affirmed and adopted the ALJ's recommendation in its entirety, and this appeal followed.

## II. STANDARDS OF REVIEW

This case involves a purely legal question, which this Court reviews de novo. *Wayne Co v AFSCME Local 3317*, 325 Mich App 614, 633; 928 NW2d 709 (2018). MERC's legal rulings may only be set aside "if they are in violation of the constitution or a statute, or affected by a substantial and material error of law." *Id*. (quotation marks and citation omitted).

## III. ANALYSIS

On appeal, the City argues that MERC erred when it concluded that an Act 312 arbitration panel had the authority to consider whether to award a lifetime, unalterable retiree healthcare stipend during arbitration proceedings. The City asserts that this proposed benefit is not a subject of mandatory collective bargaining and is outside the scope of an Act 312 arbitration panel's authority because such decisions are controlled by managerial prerogative. Although we disagree and, therefore, affirm the ALJ's decision, we do so without making any judgment as to the propriety of such a proposal from the Union. The sole question presented is jurisdictional: whether an Act 312 arbitration panel has the statutory authority to consider such a proposal from the Union, not whether the proposal is a wise or prudent one.

Public sector labor relations are governed by the public employee relations act ("PERA"), MCL 423.201 *et seq*. *Bank v Mich Ed Ass'n-NEA*, 315 Mich App 496, 500; 892 NW2d 1 (2016). PERA requires public employers to engage in collective bargaining regarding "wages, hours and other terms and conditions of employment." *Dearborn Fire Fighters Union, Local No 412, IAFF v Dearborn*, 394 Mich 229, 277; 231 NW2d 226 (1975) (quotation marks omitted); see also MCL 423.215(1) ("[T]o bargain collectively is to perform the mutual obligation of the employer and the representative of the employees to meet at reasonable times and confer in good faith with respect to wages, hours, and other terms and conditions of employment . . . ."). These topics are known

as mandatory subjects of bargaining, while other subjects are deemed permissive in that bargaining is permitted but not required. *Local 1277, Metro Council No 23, AFSCME, AFL-CIO v Center Line*, 414 Mich 642, 652; 327 NW2d 822 (1982). An impasse arises when the parties are unable to reach an agreement, and such an impasse often leads to a strike in the private sector. *Dearborn Fire Fighters Union*, 394 Mich at 278. In the public sector, however, such strikes are prohibited under PERA. *Jackson Fire Fighters Ass'n, Local 1306, IAFF, AFL-CIO v City of Jackson*, 227 Mich App 520, 522; 575 NW2d 823 (1998), citing MCL 423.202.

As a tradeoff, the Legislature enacted Act 312 to require compulsory arbitration in disputes regarding police and fire departments. *Local 1277*, 414 Mich at 650. Inasmuch as Act 312 was designed to supplement PERA, which only imposes a bargaining duty with respect to mandatory subjects, "it follows that an Act 312 arbitration panel can only compel agreement as to mandatory subjects." *Jackson Fire Fighters Ass'n*, 227 Mich App at 523 (quotation marks and citation omitted). The central issue in this case is whether the Union's proposal for a lifetime, unalterable retiree healthcare stipend for current employees is a mandatory subject within the scope of an Act 312 arbitration panel's authority. As previously stated, the question of whether to adopt the Union's proposal has not been decided by an Act 312 arbitration panel. The question we are asked to decide is strictly limited to whether an arbitration panel *may* award such a benefit—not whether it would be prudent to do so.

Because PERA's collective-bargaining provisions are modeled after the National Labor Relations Act, *Dearborn Fire Fighters Union*, 394 Mich at 277, Michigan courts often look to federal caselaw for guidance. *Kaleva-Norman-Dickson Sch Dist No 6 v Kaleva-Norman-Dickson Sch Teachers' Ass'n*, 393 Mich 583, 590-591; 227 NW2d 500 (1975). In *Allied Chem & Alkali Workers of America, Local Union No 1 v Pittsburgh Plate Glass Co*, 404 US 157, 180; 92 S Ct 383; 30 L Ed 2d 341 (1971), the United States Supreme Court stated that "the future retirement benefits of active workers are part and parcel of their overall compensation and hence a well-established statutory subject of bargaining." Nonetheless, the City maintains that the Union's proposal is not a mandatory subject because its broad scope brings it within the realm of managerial prerogative.

In *Local 1277*, 414 Mich at 665-666, the Michigan Supreme Court addressed the issue of managerial prerogative and held that a layoff provision contained in an Act 312 arbitration award could not be enforced because it involved a policy decision falling outside the scope of mandatory bargaining subjects. The arbitration award provided that when layoffs were required for lack of funds, "police officers may be laid off only in conjunction with layoffs and cutbacks in other departments." *Id.* at 647 (quotation marks omitted). The Court stated that managerial prerogative was "the single greatest, and almost universally recognized, limitation on the scope of bargaining or negotiation by state public employees . . . ." *Id.* at 660 (quotation marks and citation omitted). "In essence, the concept creates a dichotomy between 'bargainable' issues, that is, those issues which affect conditions of employment, and issues of 'policy' which are exclusively reserved to government discretion and cannot be made mandatory subjects of bargaining." *Id.* (quotation marks and citation omitted). In concluding that the layoff provision was a matter of managerial prerogative, the Court reasoned that the clause "unduly restricts the city in its ability to make decisions regarding the size and scope of municipal services." *Id.* In other words, by forcing the city to make initial decisions regarding layoffs by reference to the level of services in other departments, the city would no longer be able to consider other factors like "need, available

revenues, or public interest," thereby severely restricting the city's "ability to function effectively and pos[ing] serious questions with regard to political accountability for such decisions." *Id*. The Court therefore concluded that the Act 312 arbitration panel erred by compelling the layoff provision because "policy decisions are not mandatory subjects of bargaining." *Id*. at 665.

Here, the City contends that the Union's proposal for a lifetime, unalterable retiree healthcare stipend is likewise governed by managerial prerogative because whether the City can afford the financial burden associated with the Union's proposal is an inherently political question. In other words, the City suggests that any subject that could result in a long-term financial commitment should be excluded from mandatory bargaining because of budgetary concerns a public employer might face in the future. Although the City may be correct that the Union's proposal will create budgetary concerns for future City government, the City's position is unpersuasive because such concerns do not implicate its managerial prerogative.

The Supreme Court's analysis of managerial prerogative in *Local 1277* was not focused on the financial implications of the layoff provisions; instead, the Court held that the provision at issue was outside the scope of mandatory bargaining because it would restrict the city's decisionmaking regarding "the size and scope of municipal services," i.e., the number of employees the city could employ. While we appreciate that the cost of the Union's proposal could have a significant impact on the City's future budget and may have indirect implications as to what the City can afford in the future, the proposal does not *directly* impair the City's ability to make decisions regarding the size and scope of its services or its work force. Therefore, MERC did not err when it concluded that the Union's proposal was not beyond the authority of an Act 312 arbitration panel on the basis of managerial prerogative. See *Allied Chem & Alkali Workers*, 404 US at 180 ("[F]uture retirement benefits of active workers are part and parcel of their overall compensation and hence a well-established statutory subject of bargaining.").

Citing *Warren Police Officers Ass'n v Warren*, 89 Mich App 400; 280 NW2d 545 (1979),[1] the City also argues that the relief awarded by an Act 312 arbitration panel must approximate the type of agreement the parties would have reached during the normal course of collective bargaining, and the City would never have agreed to bind itself beyond the duration of the new CBA. The City's reliance on *Warren Police Officers Ass'n* is unpersuasive. In that case, this Court concluded that an award of retroactive health and insurance benefits was appropriate because "such benefits are normally included in a private-sector bargaining agreement." *Id*. at 404. Future retirement benefits for active workers is likewise a subject commonly included in CBAs and is, in fact, a mandatory bargaining subject. *Allied Chem & Alkali Workers*, 404 US at 180. That the City was unwilling to agree to the duration of the proposed benefit is immaterial, as the need for Act 312 arbitration arises only when the bargaining parties are unable to reach an agreement on a mandatory subject.

The City also argues that MERC's decision was incompatible with the 2011 amendment to Act 312, 2011 PA 116 ("2011 Amendment"). According to the City, the 2011 Amendment made

---

[1] Opinions of this Court issued before November 1, 1990, are not binding under MCR 7.215(J)(1), but are generally afforded some deference unless contradicted by more recent caselaw. *Woodring v Phoenix Ins Co*, 325 Mich App 108, 114; 923 NW2d 607 (2018).

"ability to pay" the most significant factor to be considered by an arbitration panel. Thus, the City contends that because there is no way to know the City's financial position in the future, it would be inappropriate to bind the municipality in perpetuity.

MCL 423.238 directs an Act 312 arbitration panel to "identify the economic issues in dispute and direct each of the parties to submit to the arbitration panel and to each other its last offer of settlement on each economic issue before the beginning of the hearing." Concerning each economic issue, "the arbitration panel shall adopt the last offer of settlement which, in the opinion of the arbitration panel, more nearly complies with the applicable factors prescribed in section 9." MCL 423.238. That section, in turn, identifies a number of factors upon which an Act 312 arbitration panel must base its findings when the dispute before the panel involves "wage rates or other conditions of employment" to be included in a new or amended CBA. MCL 423.239(1). The 2011 Amendment altered the enumerated factors and, in pertinent part, added as a factor to be considered by the panel "[t]he financial ability of the unit of government to pay." MCL 423.239(1)(a).[2] The 2011 Amendment also added subsection 2, which requires an Act 312 arbitration panel give the financial-ability factor "the most significance, if the determination is supported by competent, material, and substantial evidence." MCL 423.239(2).

The City argues that the concept of a lifetime, unalterable retiree healthcare stipend stands in direct conflict with the 2011 Amendment because it would be impossible to give the City's financial ability "the most significance" when its future financial condition cannot be known with any degree of certainty. While it may be that uncertainties regarding the City's financial future would leave an Act 312 arbitration panel without competent, material, and substantial evidence to determine that the City could, in fact, afford the long-term cost arising from the Union's proposed benefit, such a conclusion would only weigh against awarding the Union's proposal. The City's argument, however, pertains to the *propriety* of awarding the benefit proposed by the Union—not a panel's *ability* to entertain such a proposal.

Lastly, the City asserts that the ALJ, and by extension MERC, erred by citing decisions from various Act 312 arbitration panels related to defined-benefit pension plans. The City suggests that reliance on those decisions was erroneous because the ALJ ignored the existence of MCL 38.1140h, a comprehensive statutory framework to ensure pension systems are sustainable. The City contends there is no comparable safeguard in place regarding retiree healthcare benefits and, that by relying on inapposite pension decisions, the ALJ and MERC conflated continuation of an existing benefit with the creation of a new lifetime entitlement.

In its brief before MERC, the Union argued that Act 312 arbitration panels have routinely awarded retiree healthcare and pension benefits that survive the expiration of a CBA since the compulsory arbitration scheme was first enacted. Citing many of the same arbitration decisions identified in the Union's brief, the ALJ observed that "it is customary for an Act 312 panel to issue an award impacting the benefits employees are entitled to receive upon their retirement, including

---

[2] MCL 423.239 was amended again in 2014, see 2014 PA 189. The 2014 amendment did not alter the language relevant to this appeal.

pensions and retiree health insurance." MERC was unpersuaded by the City's position that the ALJ erred in this regard, explaining:

> After reviewing the ALJ's decision, however, we believe that he cited to those decisions merely to point out that Act 312 panels routinely issue awards impacting the benefits employees are entitled to receive upon retirement. The ALJ did not rely on the decisions either to establish that the healthcare stipend requested by the Union is within an Act 312 arbitrator's jurisdiction, or for the premise that such a lifetime benefit is a provision customarily awarded by an Act 312 panel.

We agree; the ultimate question in this case was whether the Union's proposal involved a mandatory subject of bargaining that could be submitted to Act 312 arbitration. The ALJ's reference to purportedly distinguishable arbitration decisions was not material to the outcome of this case and, therefore, could not constitute error requiring reversal. See *AFSCME Local 3317*, 325 Mich App at 633.

Affirmed. Being a matter of public importance, no costs are awarded. See MCR 7.219(A).

/s/ Thomas C. Cameron
/s/ Kirsten Frank Kelly
/s/ Michael J. Kelly

-6-