WEST OTTAWA EDUCATION ASSOCIATION v WEST OTTAWA
PUBLIC SCHOOLS BOARD OF EDUCATION

Docket No. 64667. Submitted February 8, 1983, at Lansing.—Decided
June 7, 1983. Leave to appeal denied, 418 Mich __.

The West Ottawa Education Association filed unfair labor prac-
tice charges with the Michigan Employment Relations Commis-
sion against the West Ottawa Public Schools Board of Educa-
tion relative to the board's dropping of a Dutch dance class and
the board's offer of consultant jobs to retired teachers. The
association argued that it was an unfair labor practice for the
board to unilaterally decide to drop the dance class. The
association further argued that the board subcontracted the
teaching of that class to an educational consortium which was
made up of the West Ottawa School District and two other
school districts and that the consortium was an alter ego of the
West Ottawa School District. As to the retired teacher issue,
the association argued that it was an unfair labor practice for
the board to unilaterally offer consulting jobs to retired teach-
ers. Following a hearing, the hearing officer held that the
school district dropped the Dutch dance class because of eco-

REFERENCES FOR POINTS IN HEADNOTES

[1, 4] 48A Am Jur 2d, Labor and Labor Relations § 1761.
[2] 48A Am Jur 2d, Labor and Labor Relations §§ 1769, 1770, 1790,
1791.
What constitutes unfair labor practice under state public employee
relations acts. 9 ALR4th 20.
Bargainable or negotiable issues in state public employment labor
relations. 84 ALR3d 242.
[3] 48A Am Jur 2d, Labor and Labor Relations § 1770 et seq.
[5] 5 Am Jur 2d, Appeal and Error § 545 et seq.
48A Am Jur 2d, Labor and Labor Relations §§ 1649, 1650.
What constitute "extraordinary circumstances" under § 10(e) of the
National Labor Relations Act, as amended (29 USCS § 160(e)), so
to excuse failure to urge objection before NLRB. 37 ALR Fed 742.
[6, 7] 18 Am Jur 2d, Corporations §§ 15, 17.
48 Am Jur 2d, Labor and Labor Relations § 1237.
[7] 48A Am Jur 2d, Labor and Labor Relations § 1764 et seq.
[8-10] 48A Am Jur 2d, Labor and Labor Relations §§ 1764, 1787 et seq.
[10, 11] 48A Am Jur 2d, Labor and Labor Relations § 1880.

nomic reasons, that there was no subcontracting of the dance class program to the consortium, that the consortium was not an alter ego of the school district, and, accordingly, that the dropping of the dance class was not a mandatory subject of bargaining. The hearing officer held that the program whereby retired teachers were offered consulting jobs was not a mandatory subject of bargaining, finding that the retiree consulting program did not alter the retirement program of any member of the association. Neither the dropping of the class or the consulting program being a mandatory subject for bargaining, the hearing officer held that the board's unilateral decisions on these matters were not unfair labor practices. On appeal to the Michigan Employment Relations Commission, the hearing officer's determinations were affirmed. The association appeals as of right. *Held:*

1. The finding by the hearing officer and the commission that the school board did not subcontract with the consortium to offer the dance class and that the class was dropped by the school district for economic reasons was supported by competent, material and substantial evidence on the record as a whole. The fact that the consortium offered the class after the school district dropped the class and that the same instructor taught the class does not require the contrary conclusion that there was an implied subcontracting agreement.

2. The question of whether the consortium is a public employer under the Michigan School Code is not properly raised on appeal, since that theory was not specifically raised before the commission.

3. The record fails to support the association's contention that the consortium was merely an alter ego of the West Ottawa School Board such that the board was the actual employer. The finding of the hearing officer and the commission that there was not an alter ego situation was supported by competent, material and substantial evidence on the entire record.

4. The dropping of the dance class for economic reasons was a decision addressed to the board's right to determine the curriculum and was thus not a mandatory subject for bargaining. The board's unilateral action, accordingly, was not an unfair labor practice.

5. The finding by the hearing officer and the commission that the retired teacher consultant program did not affect the benefits, terms and conditions of employment of the active teachers who were members of the association was supported by competent, material and substantial evidence on the record

as a whole. Since the plan as implemented affected only retired teachers, left unchanged the retirement benefits of active teachers and involved no work which would have been done by association members, the implementation of the plan was not a mandatory subject for bargaining and the unilateral implementation of the program resulted in no unfair labor practice.

Affirmed.

1. LABOR RELATIONS — MICHIGAN EMPLOYMENT RELATIONS COMMISSION — FINDINGS OF FACT — APPEAL.

Findings of fact by the Michigan Employment Relations Commission are conclusive if supported by competent, material and substantial evidence on the record considered as a whole; judicial review of the decisions of the commission involves review of the record as a whole with due deference to the commission's expertise (Const 1963, art 6, § 28; MCL 24.306[1][d], 423.216; MSA 3.560[206], 17.455[16]).

2. LABOR RELATIONS — PUBLIC EMPLOYMENT RELATIONS ACT — DUTY TO BARGAIN — SUBJECTS OF BARGAINING — UNFAIR LABOR PRACTICES.

Public employers and employees have a duty to bargain collectively under the public employment relations act with respect to wages, hours, and other terms and conditions of employment, but need not bargain with respect to subjects which fall outside the scope of those mandatory subjects; the obligation to bargain as to mandatory subjects precludes either party from taking unilateral action with respect to such subjects absent an impasse in negotiations; refusal to bargain as to mandatory subjects constitutes an unfair labor practice under the public employment relations act (MCL 423.210, 423.215; MSA 17.455[10], 17.455[15]).

3. LABOR RELATIONS — PUBLIC EMPLOYMENT RELATIONS ACT — NATIONAL LABOR RELATIONS ACT — TERMS OF EMPLOYMENT.

The phrase "terms and conditions of employment" in the public employment relations act must be construed even more expansively than the identical language in the National Labor Relations Act because public employees in Michigan are forbidden to strike; courts must utilize a case-by-case approach in determining whether a given subject involves a term and condition of employment (29 USC 158[d]; MCL 423.215; MSA 17.455[15]).

4. LABOR RELATIONS — MICHIGAN EMPLOYMENT RELATIONS COMMISSION — FINDINGS OF FACT.

The fact that an educational consortium made up of several

school districts starts to offer a course after one member of the consortium ceases to offer the course is not sufficient to mandate a judicial determination that there is an implied contract between the school district and the consortium to subcontract the offering of the course where there is competent, material and substantial evidence supporting the determination of the Michigan Employment Relations Commission that the school district merely ceased teaching the course.

5. Labor Relations — Michigan Employment Relations Commission — Appeal — Preserving Question.

A party to an appeal of a determination of the Michigan Employment Relations Commission may not for the first time in the reviewing court raise a new theory which was not argued and pursued before the commission.

6. Labor Relations — Alter Ego — Unfair Labor Practices.

The determination of whether one business entity is the alter ego of another requires consideration of whether the two enterprises have substantially identical management, business purpose, operation, equipment, customers, supervision and ownership; for the purpose of determining whether two or more related enterprises may be considered to be a single employer for the purpose of determining the existence of an unfair labor practice, four factors are considered in determining whether there is an arm's length relationship between the entities: (1) the existence of an interrelationship of the entities' operations, (2) the presence of common management, (3) the presence of centralized control of labor relations, and (4) the existence of common ownership of the entities.

7. Labor Relations — Alter Ego — Public Employers — School Districts — Educational Consortia.

An educational consortium made up of several member school districts cannot be said to be an alter ego of one of the member school districts such that the consortium and that member school district may be considered to be a single employer for the purpose of the application of the provisions of the public employment relations act where the consortium had its own facilities, employees and administration and operated its own programs, the individual member school districts had only a proportional representation in the management of the consortium, there was no centralized control of labor relations by the consortium and the member school districts, and each member school district had only a proportional ownership interest in the consortium.

8. Labor Relations — Collective Bargaining — Subjects of Bargaining — Managerial Prerogatives.

Any matter which has a material or significant impact upon wages, hours, or other conditions of employment or which settles an aspect of the relationship between employer and employee is a mandatory subject for collective bargaining; management decisions which are fundamental to the basic direction of a corporate enterprise or which impinge only indirectly upon employment security are not mandatory subjects for collective bargaining.

9. Labor Relations — Managerial Prerogatives — School Districts — Unfair Labor Practices.

A unilateral decision by a school district to drop a particular program for economic reasons is a decision related to the school board's right to determine curricula and is a permissive rather than a mandatory subject for collective bargaining; accordingly, such a unilateral decision does not constitute an unfair labor practice within the meaning of the provisions of the public employment relations act (MCL 423.210; MSA 17.455[10]).

10. Labor Relations — Retired Employees — Unfair Labor Practices.

The unilateral offering of a plan by a school district to hire retired teachers as consultants is not an unfair labor practice where the Michigan Employment Relations Commission, on competent, material and substantial evidence, found that the plan related only to benefits, terms and conditions of retired teachers, the purpose of the plan was other than to induce retirements and the work done by the consultants did not involve work which was transferred from work done by the teachers' bargaining unit.

11. Labor Relations — Retirement Incentive Programs — Subjects of Bargaining.

A retirement incentive program which does not affect the terms and conditions of employment of active employees is not a mandatory subject for bargaining.

*Foster, Swift, Collins & Coey, P.C.* (by *Karen Bush Schneider* and *Timothy P. Greeley*), for the association.

*Thrun, Maatsch & Nordberg, P.C.* (by *Kevin S. Harty*), for the board.

Before: DANHOF, C.J., and V. J. BRENNAN and
N. A. BAGULEY,* JJ.

V. J. BRENNAN, J. The West Ottawa Education
Association (hereinafter association) appeals as of
right an order of the Michigan Employment Rela-
tions Commission (hereinafter MERC) affirming a
hearing officer's decision to dismiss the associa-
tion's complaint. The charges, filed on April 20,
1981, alleged that the West Ottawa Public Schools
Board of Education (hereinafter board) had en-
gaged in unfair labor practices in violation of
§ 10(1), subds (a), (e) of the Michigan public em-
ployment relations act (hereinafter PERA). MCL
423.201 et seq.; MSA 17.455(1) et seq. Specifically,
the association challenged two decisions of the
board which had been made unilaterally and with-
out bargaining with the association. The associa-
tion is the sole and exclusive bargaining agent for
all full- and part-time certified classroom teachers
in the West Ottawa School District.

First, the board decided in 1980 to discontinue a
class in Dutch dance. The position of director of
the Dutch dance program was classified as a
"Schedule B" position under the terms of the
parties' collective-bargaining agreement. Schedule
B positions were part of the association's bargain-
ing unit. A Dutch dance class was subsequently
offered during the 1980-81 school year by the
Community Education Program and was taught by
the same person, Ms. Fabiano, at the same salary.
This education program was run by the Commu-
nity Education Consortium. The consortium was
composed of three school districts, one of which
was the West Ottawa School District. The associa-
tion claimed that the board had not discontinued

---

* Circuit judge, sitting on the Court of Appeals by assignment.

the Dutch dance class but had actually subcontracted it to the consortium, which was the alter ego of the board.

The hearing officer rejected the association's argument that the West Ottawa School Board had subcontracted the teaching of Dutch dance without first bargaining with the association. It was found that the board had ceased offering the course and had not contracted with the consortium to teach the class. The hearing officer noted that MERC has recognized that a consortium, composed of several school districts having their own employees, may be an employer under PERA. A consortium is not considered an alter ego of the member districts.

The hearing officer further stated that management's right to manage entitled the employer to make decisions that lie at the core of entrepreneurial control. There must be a balance between management's right to manage and the interest of the employees. Abandonment of a function is not necessarily a mandatory subject of bargaining. The hearing officer concluded that the association had not sustained its burden of proving that the board's actions violated the bargaining requirement of § 10(1)(e) of PERA.

The association filed timely exceptions to this decision, arguing that the board had not eliminated the Dutch dance program but had merely transferred it to an alter ego. In an opinion, dated May 12, 1982, MERC affirmed the hearing officer's finding and conclusions on this issue. The Community Education Program was found not to be an alter ego of the board under these circumstances.

On appeal, the association claims that the school board violated subsections 10(1)(a) and 10(1)(e) of PERA in unilaterally removing the position of Dutch Dance Director from the association's bargaining unit.

In reviewing MERC decisions, we note that under § 16 of PERA, fact-findings by the commission are conclusive if supported by competent, material and substantial evidence on the record considered as a whole. MCL 423.216, subds (d), (e); MSA 17.455(16), subds (d), (e). This standard of appellate review comports with Const 1963, art 6, § 28, and is similar to language used in the Administrative Procedures Act, MCL 24.306(1)(d); MSA 3.560(206)(1)(d). *Michigan Employment Relations Comm v Detroit Symphony Orchestra, Inc*, 393 Mich 116, 121, fn 3; 223 NW2d 283 (1974). Judicial review of administrative decisions involves a review of the whole record, not just those portions which support the agency's findings. Although review is not *de novo*, it entails a degree of qualitative and quantitative evaluation of the evidence considered by the agency. Courts should give due deference to the agency's expertise and not displace an agency's choice between two reasonably differing views. 393 Mich 124. However, this Court may overturn a decision if it is contrary to law. *Detroit v General Foods Corp*, 39 Mich App 180, 190; 197 NW2d 315 (1972); MCL 24.306(1)(f); MSA 3.560(206)(1)(f).

PERA § 10(1) states in pertinent part:

"(1) It shall be unlawful for a public employer or an officer or agent of a public employer (a) to interfere with, restrain or coerce public employees in the exercise of their rights guaranteed in section 9 * * * or (e) to refuse to bargain collectively with the representatives of its public employees * * *." MCL 423.210(1); MSA 17.455(10)(1).

Under § 9, MCL 423.209; MSA 17.455(9), public employees have the right to organize, join or assist labor organizations, engage in lawful activities for

the purpose of collective negotiation or bargaining, and negotiate or bargain collectively with their public employers through their representatives.

Pursuant to § 15, MCL 423.215; MSA 17.455(15), a public employer shall bargain collectively with the representative of its employees. Collective bargaining is defined as:

"The performance of the mutual obligation of the employer and the representative of the employees to meet at reasonable times and confer in good faith *with respect to wages, hours, and other terms and conditions of employment."* (Emphasis added.)

Subjects which are included within the phrase "wages, hours, and other terms and conditions of employment" are mandatory subjects of bargaining. Once a subject is classified as a mandatory subject, the parties are required to bargain on that issue and neither party may take unilateral action on the subject absent an impasse in negotiations. *Central Michigan University Faculty Ass'n v Central Michigan University,* 404 Mich 268, 277; 273 NW2d 21 (1978); *Detroit Police Officers Ass'n v Detroit,* 391 Mich 44, 54-55; 214 NW2d 803 (1974). Refusal to bargain about mandatory subjects constitutes an unfair labor practice under § 10(1)(e) of PERA. *Detroit Police Officers Ass'n v Detroit,* 61 Mich App 487, 490; 233 NW2d 49 (1975), *lv den* 395 Mich 756 (1975). In contrast, permissive subjects of bargaining fall outside the scope of those designated as mandatory subjects. The parties are not required to bargain over these issues but may do so voluntarily. *Local 1277, Metropolitan Council No 23, AFSCME v Center Line,* 414 Mich 642, 652; 327 NW2d 822 (1982).

Since §§ 10 and 15 of PERA are identical to

subsections 8(a) and 8(d) respectively of the National Labor Relations Act (NLRA), 29 USC 158, federal precedents are helpful in analyzing the issues at hand. *Local 1277, supra,* p 652; *Detroit Police, supra,* 391 Mich 53. However, Michigan courts have adopted a more liberal approach in determining whether a particular subject may be classified as a mandatory subject of bargaining, since public employees are forbidden to strike under PERA. MCL 423.202; MSA 17.455(2), *Detroit Police, supra,* 61 Mich App 491; *Van Buren Public School Dist v Wayne Circuit Judge,* 61 Mich App 6, 27; 232 NW2d 278 (1975). The determination of what constitutes a mandatory subject of bargaining is done on a case-by-case basis. *Detroit Police, supra,* 61 Mich App 490-491.

The association raises four arguments in support of its contention that the board committed an unfair labor practice. First, it alleges that the position of Dutch Dance Director was subcontracted to the consortium and, therefore, this decision was a mandatory subject of bargaining. Second, even if no subcontracting occurred, the consortium cannot be considered a public school employer and, therefore, the board actually employed the dance instructor and was required to treat her position as a Schedule B position under the parties' master agreement. Third, even if the consortium can be considered an employer, it was in reality only the alter ego of the board. Therefore, the board was the actual employer of the instructor. Fourth, even if the other three arguments are rejected, the board still had a duty to bargain with the association over the decision to drop the Dutch dance program.

We address the association's arguments *seriatim.*

*Did the board subcontract the position of Dutch Dance Director to the consortium?*

The hearing officer rejected the association's contention that the board subcontracted the teaching of Dutch dance to the consortium. He found that the board simply ceased teaching the course. The cases cited by the association were distinguished, since the work in those cases was still being done for the employer by a subcontractor under an express contract.

The association, in its reply brief, asserts that it does not contest the hearing officer's fact-findings but nonetheless claims that the board surreptitiously continued offering the program through the consortium. The association apparently believes that an implied subcontract existed. However, there is no evidence in the record to support this conclusion, apart from the fact that the consortium began offering a Dutch dance class after the board discontinued offering it. Since the hearing officer's fact-findings are supported by competent, material and substantial evidence, and the case law cited by the association is inapplicable, we affirm this portion of the hearing officer's decision.

*Is the consortium a public school employer under the Michigan School Code?*

"Public employer" is not defined under PERA, although "public employee" is. "Public employee" includes a person holding a position by employment in the Michigan public school service. MCL 423.202; MSA 17.455(2). The association notes that MERC has recognized educational consortia as public school employers under PERA, apart from their individual member school districts. See *Lakeview Public Schools,* 1977 MERC Lab Op 899; *Centerline Public Schools,* 1976 MERC Lab Op 729. The association argues, however, that consor-

tia are not public school employers under the Michigan School Code of 1976 (MCL 380.1 *et seq.;* MSA 15.4001 *et seq.),* and, therefore, the board violated the bargaining requirements of PERA because the board actually employed the dance instructor and was required to treat her position as a Schedule B position under the parties' master agreement.

The board argues that the association raises this theory for the first time on appeal and the issue should not be considered. On the other hand, in its reply brief, the association states that it has consistently maintained that the board, not the consortium, employed Ms. Fabiano when she taught Dutch dance as a leisure enrichment class. The Michigan School Code was cited on appeal merely as additional authority for this proposition.

Under MCL 423.216(d); MSA 17.455(16)(d), this Court may not consider an objection which was not argued before MERC, its commission or agent, unless the failure or neglect to urge the objection is excused because of extraordinary circumstances. See also *Detroit Police, supra,* 61 Mich App 494, fn 10. A reviewing court usurps an agency's function when it sets aside an administrative decision on a ground not previously presented to the agency. This deprives the agency of an opportunity to consider the matter, make a ruling, and state the reasons for the action. Courts should not overrule administrative decisions unless the agency ruled against an objection raised at the appropriate time by one of the parties. Restraint is particularly important where a party on appeal raises an argument with far reaching implications. *Director, Office of Workers' Compensation Programs, United States Dep't of Labor v North American Coal Corp,* 626 F2d 1137, 1143 (CA 3, 1980). It has been

held, however, that if the issue was implicitly raised at every step of the proceeding, appellate review is not precluded. *AMCAR Division, ACF Industries, Inc v NLRB*, 596 F2d 1344, 1350, fn 8.

We agree with the board and find that this issue was not raised before MERC. The only related issue raised by the association below was its alter ego theory, *i.e.*, since the consortium was only the alter ego of the board, the board actually employed Ms. Fabiano when the dance class was offered as a leisure enrichment class. Therefore, the instructor's position remained within the bargaining unit and should have been treated as any other Schedule B position. The argument presented on appeal, however, is different. The association now assumes that the consortium is a separate, independent entity but argues that it cannot be legally defined as a public school employer under the Michigan School Code. Therefore, the board must be the employer by default. Since we believe that the latter argument was not implicitly raised by the former and has potentially far reaching implications, we decline to review this subissue.

*Was the consortium an alter ego of the board?*

The association argues that if the consortium could be considered a separate public employer, it was merely an alter ego of the board and, therefore, the board actually employed the Dutch dance instructor. The hearing officer rejected this argument, even though the board was a member of the association and participated in consortium decisions. The association maintains that this conclusion was erroneous because the West Ottawa School District received state funds as the administering district, compensated consortium employees and held the dance class within its boundaries and the content of the course did not change. The

association concludes that the hearing officer improperly found that the board had abandoned the class and that a class in Dutch dance was subsequently conducted independently by the consortium.

In deciding whether an entity is an alter ego, the factors considered are whether the two enterprises have substantially identical management, business purpose, operation, equipment, customers, supervision and ownership. *Carpenters Local Union No 1846 v Pratt-Farnsworth, Inc,* 690 F2d 489, 507 (CA 5, 1982); *Amalgamated Meat Cutters v NLRB,* 663 F2d 223, 226-227 (CA DC, 1980); *Chippewa Motor Freight,* 261 NLRB No 66, 110 LRRM 1140 (1982); *Hageman Underground Construction,* 253 NLRB 60; 106 LRRM 1385 (1980). The focus of this test is on any continuing disguised attempt to avoid the obligations of a collective-bargaining agreement through a sham transaction or technical change in operations. *Carpenters, supra,* pp 507-508; *Amalgamated, supra,* p 226. Alter ego cases frequently contain specific findings on the substantial continuity of the work force from the union employer to the nonunion employer. *Carpenters, supra.*

However, alter ego issues commonly arise in successorship situations where the ownership of the entity who signed the collective-bargaining agreement changes hands. Although a bona fide successor generally is not bound by prior bargaining agreements, and alter ego will be, since it is, in reality, a disguised continuance of the old entity. *Carpenters, supra,* p 507. Since both the consortium and the West Ottawa School District existed simultaneously for several years, the alter ego test is inappropriate to evaluate the association's claims.

The appropriate test is the closely related "single employer" doctrine. Under this doctrine, two or more related enterprises may be considered a single employer for purposes of determining the existence of an unfair labor practice. *Carpenters, supra,* p 504, see also *Hageman, supra.* The factors considered are: (1) interrelation of operations; (2) common management; (3) centralized control of labor relations; and (4) common ownership. *Carpenters, supra,* p 504; *Chippewa, supra.* The NLRB has stressed the first three factors, although no single factor is controlling. In addition, all of the criteria need not exist. Single employer status ultimately depends upon all of the circumstances and is characterized as an absence of an arm's length relationship between the unintegrated entities. *Carpenters, supra,* pp 504-505.

Here, the operation of the West Ottawa School District and the adult education program were separate. The hearing officer found that the consortium had its own facilities, employees, superintendents, and council. It operated programs in the member school districts, which included elementary education programs, high school completion programs and noncredit leisure enrichment courses. The classes were designed primarily for adults rather than primary and secondary school age children, although Dutch dance was open to tenth through twelfth grade students.

As far as common management, the consortium was run on a day-to-day basis by an advisory council, consisting of the three superintendents of the member school districts. Each superintendent reported to his respective board of education concerning the consortium's activities. West Ottawa was the administering district at the time of the hearing. This entailed receiving state aid on behalf

of the consortium and filing the necessary reports with the Michigan Department of Education. There is no indication that the administering district exercised more control over the consortium than the other districts. Although West Ottawa had a one-third management interest, we find that this fact is not sufficient to establish that the consortium and board were under a common management.

Further, there was no centralized control of labor relations. The superintendent of the West Ottawa Public Schools stated that individuals who performed duties relating to credit courses offered by the community education program were considered employees of the district in which they worked. People involved in noncredit leisure enrichment courses were not so considered. Thus, a consortium employee's membership in a particular bargaining unit depended on what course she taught and where.

Finally, the facts concerning common ownership show that the West Ottawa School District only had a one-third interest in the consortium, as we have previously stated. This is not sufficient to find common ownership. There is no showing that the transactions between the board and the consortium were not at arm's length. Therefore, we conclude that these two entities were not a single employer under PERA.

*Was the board required to bargain over its decision to drop the Dutch dance program?*

The association finally contends that, even if no contracting out occurred and the consortium is a separate employer, the decision to drop the dance class is still a mandatory subject of bargaining.

In his concurring opinion in *Fibreboard Paper Products Corp v NLRB,* 379 US 203, 223; 85 S Ct

398; 13 L Ed 2d 233 (1964), Justice Stewart emphasized that the Court had not decided that every managerial decision which necessarily terminates an individual's employment is subject to a duty to bargain. He continued:

"Nothing the Court holds today should be understood as imposing a duty to bargain collectively regarding such managerial decisions, which lie at the core of entrepreneurial control. Decisions concerning the commitment of investment capital and the basic scope of the enterprise are not in themselves primarily about conditions of employment, though the effect of the decision may be necessarily to terminate employment."

Various tests have been employed to determine whether a subject is a "term and condition of employment", and, therefore, a mandatory subject of bargaining. This Court has developed a standard which incorporates several of these tests. Any matter which has a material or significant impact upon wages, hours, or other conditions of employment or which settles an aspect of the relationship between employer and employee is a mandatory subject, except for management decisions which are fundamental to the basic direction of a corporate enterprise or which impinge only indirectly upon employment security. *Houghton Lake Education Ass'n v Houghton Lake Bd of Ed,* 109 Mich App 1, 6; 310 NW2d 888 (1981), *lv den* 413 Mich 917 (1982); *Detroit Police, supra,* 61 Mich App 492, citing *Westinghouse Electric Corp v NLRB,* 387 F2d 542, 547 (CA 4, 1967); *Allied Chemical & Alkali Workers of America v Pittsburgh Plate Glass Co,* 404 US 157, 178; 92 S Ct 383; 30 L Ed 2d 341 (1971); *Fibreboard, supra.*

Under this test, this Court has conclusorily

found that the redefinition or constitution of a bargaining unit is a permissive subject of bargaining. *Detroit Firefighters Ass'n Local 344, IAFF v Detroit,* 96 Mich App 543, 546; 294 NW2d 842 (1980), *lv den* 411 Mich 861 (1981). In that case, the city proposed to delete several positions from the bargaining unit.

The board's decision to drop the dance class for economic reasons is analogous to the partial closing of a business. In *Textile Workers Union of America v Darlington Manufacturing Co,* 380 US 263, 275; 85 S Ct 994; 13 L Ed 2d 827 (1965), the Supreme Court held that a partial closing is an unfair labor practice under § 8(a)(3) of the NLRA if the employer was motivated by anti-union animus.

In *First National Maintenance Corp v NLRB,* 452 US 666; 101 S Ct 2573; 69 L Ed 2d 318 (1981), the Court was confronted with the issue of whether an employer must negotiate over its decision to close part of its business for solely economic reasons. There, the fees paid by a nursing home to the employer, First National, were reduced thus causing First National to lose money on the contract. First National cancelled the contract and discharged its employees who worked at the nursing home.

The Court initially noted that federal courts and the NLRB have not been consistent in finding unfair labor practices in cases involving partial closings. 452 US 673. The fundamental purpose of the NLRA would only be served if the subject proposed for discussion is amenable to resolution through the bargaining process. The Court further stated that management must be free of restraints entailed in the bargaining process to the extent essential for the running of a profitable business. 452 US 678-679.

"[I]n view of an employer's need for unencumbered decisionmaking, bargaining over management decisions that have a substantial impact on the continued availability of employment should be required only if the benefit, for labor-management relations and the collective-bargaining process, outweighs the burden placed on the conduct of the business." 452 US 679.

It was noted that the NLRA was not intended to favor either labor or management's individual interests, but to foster a neutral system which resolves conflicts. 452 US 680-681. After weighing the union's interests against management's, the Court stated:

"We conclude that the harm likely to be done to an employer's need to operate freely in deciding whether to shut down part of its business purely for economic reasons outweighs the incremental benefit that might be gained through the union's participation in making the decision, and we hold that the decision itself is not part of § 8(d)'s 'terms and conditions' * * * over which Congress has mandated bargaining." 452 US 686.

However, bargaining was required over the results or effects of the decision. 452 US 677, fn 15, 681-682.

In *Local 1277, Metropolitan Council No 23, AFSCME v Center Line,* 414 Mich 642; 327 NW2d 822 (1982), the Michigan Supreme Court examined both *Fibreboard* and *First National* in determining whether the inclusion of a layoff clause in the parties' collective-bargaining agreement was proper. The clause provided that any layoff of police officers because of a general lack of funds could be made only in conjunction with layoffs and cutbacks in other city departments. The Court believed that the case before it was more closely aligned to *First National.* It concluded that the

clause unduly restricted the city in its ability to make decisions regarding the size and scope of municipal services. Although the initial layoff decision would not be a mandatory subject of bargaining, the city would be required to bargain over the impact of the decision. Thus, the union could protect its members after the initial decision had been made. 414 Mich 658-661.

The Court also examined Wisconsin law to support its conclusion. In *Beloit Education Ass'n v Employment Relations Comm,* 73 Wis 2d 43, 58-60; 242 NW2d 231 (1976), the court held that a layoff proposal requiring seniority as a basis for layoffs was a mandatory subject of bargaining, so long as it did not invade the school board's right to determine curriculum. The court commented that matters of curriculum determination presumably are not mandatory subjects of bargaining. *Local 1277, supra,* p 662. The court also cited another Wisconsin case, which held that "economically motivated layoffs of public employees resulting from budgetary restraints is a matter primarily related to the exercise of municipal powers and responsibilities and the integrity of the political processes of the municipal government". The Wisconsin Supreme Court noted that requiring bargaining on these issues would destroy the equal balance of power between the union's collective-bargaining rights and the general public's right to determine the quality and level of municipal services they considered vital. *Local 1277, supra,* pp 662-663, citing *City of Brookfield v Wisconsin Employment Relations Comm,* 87 Wis 2d 819, 833; 275 NW2d 723 (1979).

In light of these decisions, we conclude that the board was not required to bargain over its initial decision to drop the Dutch dance program. The

decision was made solely because of school budget cuts. The decision related to the board's right to determine curriculum, a right which was exclusively retained by the school district in § 3.01 of the parties' master agreement. Thus, we affirm the hearing officer's dismissal of plaintiff's complaint and the MERC's affirmance of that decision on the basis that the school board did not violate subsections 10(1)(a) and 10(1)(e) of PERA in unilaterally removing the position of Dutch Dance Director from the association's bargaining unit.

We next review the association's second claim which is that the school board violated subsections 10(1)(a) and 10(1)(e) of the public employment relations act by unilaterally adopting a retirement consultant plan.

In early 1981, the board suggested, and subsequently adopted, a plan whereby retired teachers were given an opportunity to work for the West Ottawa School District in various capacities for up to 25 days a year. The board labeled the plan as a "retirement consultant program". The association characterized it as an "early retirement incentive plan", which, they maintained, was a mandatory subject of bargaining.

The hearing officer initially noted in his decision that the parties had previously discussed early retirement plans but had not reached an agreement. It did not appear from the record that the subject was at an impasse posture at any time. The hearing officer rejected the association's argument that the retirement plan was a mandatory subject of bargaining. He found that the plan, as issued, did not alter the retirement plan of any teacher represented by the association in any way. Although it could be an inducement which might cause teachers to retire early, the plan did not

alter what the teachers would receive upon retirement. All that was offered was a two-year possibility of working as a consultant for a set fee, up to a maximum amount, after retirement. Whether these benefits were implemented as advertised was of no concern to MERC in administering PERA. There was no provision in the retirement consultant plan which indicated that it was offered as the "price" of early retirement.

The hearing officer stated that the United States Supreme Court has held that an employer is not obligated to bargain about what retired workers receive, since retirees are not employees. That United States Supreme Court decision was determined under § 8(a)(5) of the Labor Management Relations Act, which is identical to § 10(1)(e) of PERA. The hearing officer concluded that this reasoning should be applied here and that the association had not sustained its burden of proof.

MERC, in affirming the hearing officer's decision, noted that the hearing officer had found that the plan related only to benefits, terms, and conditions of employment of retired teachers. There was no evidence that retired teachers were to be hired to do bargaining unit work. MERC also noted that there was no evidence that the board had, in fact, transferred "unit work" to retiree consultants.

The standard of review previously set forth in the discussion of the first issue also applies to this issue and need not be reiterated.

The above findings of fact are supported by competent, material and substantial evidence. Although the association claims that the plan was intended as an early retirement incentive and the school district's superintendent may have characterized it as such, this was not the primary purpose of the plan. The plan was designed to obtain

individuals to perform jobs which the district's administrative staff could not handle. The hearing officer correctly found that the plan would not increase or decrease the benefits teachers would receive under their pension or retirement plans, nor was it offered only if a teacher retired early. The plan only afforded a possibility of postretirement employment if the teacher had served at least five years in the school system and was already retired. Characterizing the plan as an "inducement" to retire early is questionable, since a teacher would probably not give up a higher salary for the chance to earn no more than $2,500 a year as a consultant. On the contrary, the plan could be characterized as an inducement to remain in the school system.[1]

In *Allied Chemical & Alkali Workers of America v Pittsburgh Plate Glass Co,* 404 US 157, 180; 92 S Ct 383; 30 L Ed 2d 341 (1971), the Court stated that future retirement benefits of *active* workers are part of their overall compensation and, therefore, a mandatory subject of bargaining under the NLRA. Similarly, pension and retirement provisions are mandatory subjects of bargaining under PERA. *Detroit Police Officers Ass'n v Detroit,* 391 Mich 44, 63-64; 214 NW2d 803 (1974), citing *Inland Steel Co v NLRB,* 77 NLRB 1; 21 LRRM 1310, enforced 170 F2d 247 (CA 7, 1948); *cert den* 336

---

[1] However, we do note that, contrary to the MERC's decision that the duties of the retiree consultants would not include bargaining unit work, the hearing officer did not make such a finding. It is true that the plan does not specify what jobs are to be assigned and that "unit work" had not yet been given to consultants. However, the superintendent did admit on cross-examination that some of the duties he had suggested would include bargaining unit work. If "unit jobs" are given to the retiree consultants, this could be characterized as "contracting out" of work, which may be a mandatory subject of bargaining under *Fibreboard, supra.* Since this Court is not faced with this fact situation, the issue need not be examined now. However, we caution the board that unilateral contracting out of "unit work" to retiree consultants could constitute an unfair labor practice.

US 960; 69 S Ct 887; 93 L Ed 1112 (1949). Even if the consultant plan is deemed to be an early retirement incentive plan, such plans are not considered either pension or retirement plans. *Jurva v Attorney General,* 111 Mich App 595, 602; 315 NW2d 178 (1981).

On the other hand, retirement incentive plans are mandatory subjects of bargaining when they affect an active employee's terms and conditions of employment. *Associated Teachers, supra.* However, the consultant plan here does not affect the salaries of those teachers who have not yet retired or the terms and conditions of their present employment. Further, the consultant plant does not require early retirement but only limits participation to retired employees.

The facts here closely resemble those in *Allied Chemical, supra.* There, the union and employer had negotiated an employee health insurance plan in which retired workers participated. When Medicare was enacted, the union sought midterm bargaining to renegotiate the insurance benefits for the retirees. Instead, the employer stated that it was cancelling the retiree program and instead offering each retiree a monthly amount toward supplemental Medicare coverage. The employer reasoned that the old health insurance plan was useless under Medicare and that retiree benefits were not a mandatory subject of bargaining. The United States Supreme Court held that retirees are not employees within the meaning of the collective-bargaining requirements of the NLRA. In addition, they could not be included as employees in the bargaining unit. *Allied Chemical, supra,* p 172.

Even though retirees were not members of the bargaining unit, the Court nonetheless stated that

their benefits might be a mandatory subject of bargaining. The relevant inquiry is whether the third party's concerns vitally affect the terms and conditions of employment of the active bargaining unit employees. *Allied Chemical, supra,* p 179. The Court, however, rejected the union's contention that bargaining over retiree benefits would mitigate uncertainty and facilitate future agreement concerning active employees' retirement plans. This contention was deemed too speculative to require mandatory bargaining. *Allied Chemical, supra,* pp 180-182.

Here, the plan does not alter retirement benefits which active teachers will receive or require early retirement for participation. The plan is only available to those who have already retired. Since the retirees are not expressly or impliedly a part of the association's bargaining unit, the board had no duty to bargain unless its plan vitally affects the terms and conditions of employment of the active members. The primary way that the plan would vitally affect the active teachers is if unit work is taken away from them and transferred to retiree consultants. However, this has not actually occurred. Therefore, we find that bargaining was not required. The board's unilateral adoption of the retirement consultant plan did not constitute an unfair labor practice.

Affirmed.