GREAT LAKES SALES, INC v STATE TAX COMMISSION

Docket No. 136999. Submitted April 21, 1992, at Grand Rapids. Decided May 18, 1992, at 9:10 A.M.

Great Lakes Sales, Inc., petitioned the Kent Circuit Court for judicial review of the State Tax Commission's denial of its application for an industrial facilities exemption certificate pursuant to the rehabilitation and industrial development districts act, MCL 207.551 *et seq.*; MSA 7.800(1) *et seq.*, for an addition to an existing building. The court, Donald A. Johnston, J., reversed the denial of the application and found that Great Lakes was entitled to the certificate. The commission appealed.

The Court of Appeals *held:*

1. The commission erred in interpreting MCL 207.552(10); MSA 7.800(2)(10) to require that, to qualify for a certificate, the entity conducting the operation must be classified as a manufacturer under division D of the Standard Classification Manual of 1972 published by the United States Office of Management and Budget. Section 2(10) is not limited to operations that manufacture goods or materials, but applies to any type of operation that would be performed by a manufacturer under division D. It is undisputed that the operations conducted in Great Lakes' new facility include such types of operations.

2. Because the primary purpose and use of the new facility appears to be the processing of goods or materials by physical change and because an overwhelming majority of Great Lakes' products are subject to processing in the new facility, the facility satisfies the definition of "industrial property" under § 2(6), MCL 207.552(6); MSA 7.800(2)(6). The commission's decision that the primary purpose and use of the new facility is not manufacturing is not supported by substantial evidence.

3. A nonmanufacturer who constructs a new facility that has as its primary purpose and use the processing of goods may qualify for the tax exemption with regard to that new facility.

Affirmed.

REFERENCES

Am Jur 2d, State and Local Taxation §§ 354-361.

What constitutes manufacturing and who is a manufacturer under tax laws. 17 ALR3d 7.

1. TAXATION — INDUSTRIAL FACILITIES EXEMPTION CERTIFICATE —
    REHABILITATION AND INDUSTRIAL DEVELOPMENT DISTRICTS ACT
    — NONMANUFACTURERS.

    A nonmanufacturer who constructs a new facility that has as its
    primary purpose and use the conducting of operations that
    would be conducted by an entity included in the classifications
    under division D, manufacturing, of the Standard Classification
    Manual of 1972 published by the United States Office of Man-
    agement and Budget may qualify for an industrial facilities
    exemption certificate pursuant to the rehabilitation and indus-
    trial development districts act (MCL 207.552[10]; MSA 7.800[2]
    [10]).

2. TAXATION — REHABILITATION AND INDUSTRIAL DEVELOPMENT DIS-
    TRICTS ACT — INDUSTRIAL PROPERTY.

    To qualify as "industrial property" under the rehabilitation and
    industrial development districts act, a facility must comprise an
    integrated whole, the primary purpose and use of which is the
    manufacture of goods or materials or the processing of goods
    and materials by physical or chemical change (MCL
    207.552[6],[10]; MSA 7.800[2][6],[10]).

*Mika, Meyers, Beckett & Jones* (by *Scott E. Dwyer*), for Great Lakes Sales, Inc.

*Frank J. Kelley,* Attorney General, *Gay Secor Hardy,* Solicitor General, and *Russell E. Prins* and *Ross H. Bishop,* Assistant Attorneys General, for the State Tax Commission.

Before: HOOD, P.J., and SHEPHERD and K. N. SANBORN,* JJ.

SHEPHERD, J. Respondent, the State Tax Commission, appeals as of right a December 28, 1990, decision by the Kent Circuit Court reversing the commission's denial of petitioner's application for an industrial facilities exemption certificate pursuant to the rehabilitation and industrial development districts act, 1974 PA 198, MCL 207.551 *et seq.*; MSA 7.800(1) *et seq.*

* Former circuit judge, sitting on the Court of Appeals by assignment.

Petitioner, Great Lakes Sales, Inc., is engaged in the general business of wholesale distribution of vinyl and carpet floor coverings. In November 1987, petitioner filed an application for an industrial facilities exemption certificate with the City of Wyoming for a 14,480-square-foot addition to an existing building. The existing building had previously been granted an exemption by Kent Circuit Court Judge Roman Snow in 1979. After the City of Wyoming had granted its approval on February 1, 1988, the application was sent to the respondent commission for final approval. In August 1988, the commission notified petitioner that it was denying petitioner's application on the ground that the property did not satisfy the definitional requirements of 1974 PA 198, MCL 207.551 *et seq.*; MSA 7.800(1) *et seq.* (the rehabilitation and industrial development districts act). Petitioner then requested a hearing before the commission. After a hearing on November 29, 1988, the commission issued an order denying petitioner's application for an industrial facilities exemption certificate. Subsequently, petitioner requested a rehearing because the commission failed to provide any findings of fact or conclusions of law as required under MCL 24.285; MSA 3.560(185). On March 7, 1989, the commission issued another order denying petitioner's application. Petitioner submitted a second request for rehearing, and another hearing was held on October 24, 1989. On December 11, 1989, the commission issued its findings of fact, conclusions of law, and an opinion denying petitioner's application. Subsequently, petitioner sought judicial review in the Kent Circuit Court. On December 28, 1990, the court reversed the commission's denial of petitioner's application and found that petitioner was entitled to the industrial facilities exemption certificate because its property qualified

as "industrial property" under § 2(6) of 1974 PA 198.

The rehabilitation and industrial development districts act was adopted by the Legislature to provide qualifying facilities an exemption from, or abatement of, ad valorem real and personal property taxes under the General Property Tax Act, 1893 PA 206, MCL 211.1 *et seq.*; MSA 7.1 *et seq.* In general, such facilities must create, maintain, or prevent loss of employment and must primarily restore, replace, or update the technology of obsolete industrial property. MCL 207.559(2); MSA 7.800(9)(2); *Murco, Inc v Dep't of Treasury,* 144 Mich App 777, 779; 376 NW2d 188 (1985). For a "new facility," a specific tax called the "industrial facility tax" is imposed, which equals fifty percent of what the facility's tax would be under the general property tax. MCL 207.564(2); MSA 7.800(14)(2). A "new facility" is defined in § 2(4) of 1974 PA 198, MCL 207.552(4); MSA 7.800(2)(4), as

> new industrial property other than a replacement facility to be built in a plant rehabilitation district or industrial development district.

In this case, petitioner sought an exemption for property valued at approximately $850,000 in 1988.

Since the adoption of the act, "industrial property" has been defined in § 2(6) of 1974 PA 198, MCL 207.552(6); MSA 7.800(2)(6), as follows:

> "Industrial property" means land improvements, buildings, structures, and other real property, and machinery, equipment, furniture, and fixtures or any part or accessory thereof whether completed or in the process of construction comprising an integrated whole, the primary purpose and use of which is the manufacture of goods or materials or

the processing of goods and materials by physical
or chemical change . . . .
Industrial property shall include facilities re-
lated to a manufacturing operation under the
same ownership, including but not limited to office,
engineering, research and development, warehous-
ing, or parts distribution facilities.

In 1982, the act was amended by 1982 PA 417,
which added § 2(10) to define the phrases "manu-
facture of goods or materials" and "processing of
goods or materials":

"Manufacture of goods or materials" or "process-
ing of goods or materials" means any type of
operation that would be conducted by an entity
included in the classifications provided by division
D, manufacturing, of the standard classification
manual of 1972, published by the United States
office of management and budget, regardless of
whether the entity conducting such an operation is
included therein.

The first question presented in this case involves
the interpretation of the statute providing an ex-
emption for qualified property. Respondent con-
tends that petitioner failed to qualify for the ex-
emption under 1974 PA 198 because the facility
must be used primarily for the manufacture of
goods or materials. Petitioner argues that the new
facility qualifies as industrial property entitled to
an exemption because it comprises an integrated
whole whose primary purpose and use, as set forth
in § 2(6), involves the type of operation that falls
within the definition of "manufacture of goods or
materials" or "processing of goods or materials"
under § 2(10) of the act.

The primary goal of judicial interpretation of
statutes is to ascertain and give effect to the intent
of the Legislature. *William Mueller & Sons, Inc v*

*Dep't of Treasury,* 189 Mich App 570, 572; 473 NW2d 783 (1991). Where the meaning of a statute is clear and unambiguous, judicial construction or interpretation is precluded. *People v Willie Miller,* 186 Mich App 238, 241; 463 NW2d 250 (1990). When ascertaining legislative intent, the language of the statute should be given a reasonable construction, considering the statute's purpose and the object sought to be accomplished. *Id.* Unless defined in the statute, every word or phrase should be accorded its plain and ordinary meaning. MCL 8.3a; MSA 2.212(1); *People v Tracy,* 186 Mich App 171, 176; 463 NW2d 457 (1990). Tax exemption statutes are to be strictly construed in favor of the taxing unit. *Mueller, supra.* Courts are to give deference to an administrative agency's interpretation of a statute it is entrusted to enforce. *Bar Processing Corp v State Tax Comm,* 171 Mich App 472, 478; 430 NW2d 753 (1988).

Under 1974 PA 198, as amended, a facility qualifies as industrial property under § 2(6) if it comprises an "integrated whole, the primary purpose and use of which is the manufacture of goods or materials or the processing of goods and materials by physical or chemical change." Section 2(10) defines "manufacture of goods or materials" and "processing of goods or materials" to mean "any type of operation that would be conducted by an entity included in the classifications provided by division D . . . regardless of whether the entity conducting such an operation is included therein." Accordingly, the manufacture of goods or materials or processing of goods or materials, as defined in § 2(6), includes any type of operation that would be conducted by an entity classified as a manufacturer under division D of the Standard Classification Manual, regardless of whether the entity

performing the operation is classified as a manufacturer under division D.

The terms "the primary purpose and use" and "by physical or chemical change" as used in § 2(6) are not defined by the statute, and thus must be accorded their ordinary and customary meaning. *Tracy, supra. Webster's Seventh New Collegiate Dictionary* (1967) (based on *Webster's Third New International Dictionary*) defines "primary" as "of first rank, importance, or value." *Webster's Third New International Dictionary Unabridged Edition* (1964) defines "change" as:

> to make different in some particular but short of conversion into something else . . . to become different in one or more respects without becoming something else.

*Webster's Seventh New Collegiate Dictionary* adds that

> change implies making either an essential difference often amounting to a loss of original identity or a substitution of one thing for another; . . . change may imply any variation whatever whether affecting a thing essentially or superficially.

We note that in rendering its December 11, 1989, opinion, the commission committed several errors in interpreting the relevant statutory provisions. In its findings of fact, the commission found that 1974 PA 198 was amended by adding § 2(10) "requiring that the entity would be included in the classifications provided by division D, Manufacturing, of the Standard Classification Manual of 1972." In its conclusions of law and opinion, the commission stated:

The Commission concluded that the amendment to 1974 PA 198 which added section 2(10) requires that the facility must be engaged in manufacturing instead of only causing a physical or chemical change to a product.

Contrary to respondent's construal, the plain language of § 2(10) does not require that the entity conducting the operation must be classified as a manufacturer under division D of the Standard Classification Manual. Rather, § 2(10) focuses on the type of operation conducted by an entity that would be included in the classifications provided by division D, manufacturing, regardless of whether the entity is a manufacturer. Moreover, § 2(10), by its plain language, includes the "processing of goods or materials," which, under § 2(6), is "by physical or chemical change." Thus, § 2(10) is not limited to operations that manufacture goods or materials, but includes any type of operation that would be performed by a manufacturer under the Standard Classification Manual.

In this case, it is undisputed that the operations conducted in petitioner's new facility include types of operations that would be conducted by an entity included in the classifications under division D. Petitioner's operations involving the cutting of large rolls of carpet and vinyl are identical to the final steps in the manufacturing process occurring in carpet and vinyl mills. The Standard Industrial Classifications Codes describing petitioner's new facility were 2279 (i.e., establishments primarily engaged in the manufacture of carpets and rugs) and 3396 (i.e., establishments primarily engaged in the manufacture of vinyl). Both codes describing petitioner's operations are included in division D, manufacturing. (Note: Code 2279 is now classified under code 2273.) Thus, even though petitioner is

classified under code 5023 (i.e., establishments primarily engaged in the wholesale distribution of home furnishings and housewares including carpets, linoleum, and all other types of hard and soft floor coverings), the operations occurring in petitioner's new facility are the types that would be conducted by an entity included in the classifications provided by division D, manufacturing, as required by § 2(10) of the act.

Having decided that § 2(10) of the statute does not require the entity or the facility to be engaged in manufacturing and that petitioner satisfies the definitional requirements of § 2(10), because the operations occurring within its new facility are types of operations that would be conducted by an entity classified as a manufacturer by the Standard Classification Manual, the question then becomes whether the processing of goods or materials in petitioner's new facility satisfies the definition of "industrial property" under § 2(6) of the act.

In denying petitioner's application for an exemption, the commission stated:

> It is the opinion of the State Tax Commission that the primary purpose of the facility is not manufacturing but is warehousing and distribution of carpet and floor covering.
>
> It is further the opinion of the State Tax Commission that the operation of carpet or vinyl sheet cutting is not manufacturing when it is an isolated operation and therefore the sales display area, floor covering storage and offices are not qualified as manufacturing within its understanding of section 2(10) of 1974 PA 198.

Section 106 of the Administrative Procedures Act, MCL 24.306; MSA 3.560(206), provides the scope of judicial review in this matter:

(1) Except when a statute or the constitution provides for a different scope of review, the court shall hold unlawful and set aside a decision or order of an agency if substantial rights of the petitioner have been prejudiced because the decision or order is any of the following:

(a) In violation of the constitution or a statute.

\* \* \*

(d) Not supported by competent, material and substantial evidence on the whole record.

\* \* \*

(f) Affected by other substantial and material error of law.

(2) The court, as appropriate, may affirm, reverse or modify the decision or order or remand the case for further proceedings.

When reviewing whether an agency's decision was supported by competent, material, and substantial evidence on the whole record, a court must review the entire record and not just the portions supporting an agency's findings. *West Ottawa Ed Ass'n v West Ottawa Public Schools Bd of Ed,* 126 Mich App 306, 313; 337 NW2d 533 (1983). "Substantial evidence" has been defined as that which a reasonable mind would accept as adequate to support a conclusion. *Consumers Power Co v Public Service Comm,* 189 Mich App 151, 187; 472 NW2d 77 (1991). Substantial evidence consists of more than a scintilla of evidence, but less than a preponderance of the evidence. *Id.*

As noted above, to qualify as industrial property under § 2(6), the facility must comprise an "integrated whole, the primary purpose and use of which is the manufacture of goods or materials or the processing of goods and materials by physical or chemical change." In this case, petitioner's new facility is used to store, cut, and process floor covering materials in an integrated operation. In

both facilities, petitioner stores ceramic tiles, vinyl, carpet, carpet pads, and wood flooring. Carpet and sheet vinyl come in large, bulky rolls that must be processed by physical change (i.e., cut to size) in order to be sold to retailers. Although petitioner is classified as a wholesaler, the operation in the new building is similar to the final manufacturing steps taken by carpet mills and vinyl floor manufacturers. As with the mills and vinyl floor manufacturers, petitioner uses a cutting machine that occupies a small part of the new facility. Petitioner, like the manufacturers, must store or warehouse materials on storage racks. The storage and warehousing of the materials is incidental to the processing stage, because petitioner must process the floor covering materials to conduct its wholesale business. Thus, determining whether petitioner's new facility satisfies the definition of industrial property under § 2(6) turns on whether its primary purpose and use involves the processing of goods or materials by physical change.

In this case, a review of the entire record, which covers only two of the hearings before the commission reveals that the overwhelming majority of petitioner's products are subject to processing in the new facility. There, approximately ninety percent of the vinyl and sixty-six to eighty-five percent of the carpet is cut. In addition, forty to sixty percent of the wood flooring is broken down into smaller components, as is sixty to seventy percent of the ceramic tiles. The only items stored by petitioner that are not cut or disassembled are the carpet pads.

Respondent argues that the primary purpose and use of petitioner's new facility is not manufacturing, but rather the wholesale distribution of vinyl and carpet floor coverings manufactured by

others. Respondent concludes that the new facility is primarily for storage because only about 3,200 square feet, or approximately twenty-two percent of the total area of the new facility, is devoted to the processing operations. The record indicates that the cutting machine that is used to cut the vinyl and the carpet occupies about 1,000 square feet or about five percent of the new facility. In addition, a space of approximately 800 to 1,000 square feet is set aside for manually cutting fifteen-foot-wide carpets and grass carpets that cannot be cut on the machine. Further, defendant's employees break down about fifty percent of the shipments containing ceramic tile for the purpose of preparing sample boards in an area of approximately 1,200 square feet. Aisles and racks occupy about fifty percent of the new facility.

Contrary to respondent's claims, we do not believe that floor space utilization is controlling with regard to this issue. As previously observed, the statute leaves "primary purpose and use" undefined. Moreover, § 2(6) specifically allows that "[i]ndustrial property shall include facilities related to a manufacturing operation . . . including but not limited to . . . warehousing, or parts distribution facilities." The mere fact that most of the petitioner's new facility is not occupied by machinery or employees involved in the processing of goods or materials is not dispositive. The goods processed and sold by petitioner are bulky and require considerable space for storage. For this reason, the percentages of goods that are processed are of greater relevance in determining the primary use of the facility.

Thus, the record suggests that the commission's decision was not supported by substantial evidence, given that the primary purpose and use of the new facility appears to be the processing of

goods or materials by physical change. *Consumers Power Co, supra.* Throughout this opinion, we have emphasized the primary purpose of the operations at the new facility rather than the primary purpose of petitioner's entire business. This is the only reasonable interpretation of the present statutory scheme, which refers to the "land improvements, buildings, structures . . . or any part or accessory thereof . . . the primary purpose and use of which is the . . . processing of goods and materials by physical or chemical change." MCL 207.552(6); MSA 7.800(2)(6). We therefore hold that a nonmanufacturer who constructs a new facility that has as its primary purpose and use the processing of goods may qualify for the tax exemption with regard to that new facility.

We affirm the decision of the Kent Circuit Court reversing the commission's decision denying petitioner's application for an industrial facilities exemption certificate.