DEPARTMENT OF TRANSPORTATION v GOIKE

Docket No. 176456. Submitted July 18, 1996, at Lansing. Decided December 27, 1996, at 9:05 A.M.

The Department of Transportation brought an action in the Macomb Circuit Court against Michael and Marjorie Goike and Paul C. and Carolee Stewart, seeking to condemn for highway purposes certain lands then owned by the defendants. The defendants filed a motion for review of the necessity of the taking of oil, gas, and mineral rights, to which the plaintiff responded with a brief indicating that, pursuant to MCL 231.53; MSA 8.265(3), the defendants retained the fluid mineral and gas rights in the property. The matter of the evaluation went to mediation, and, thereafter, the court, George C. Steeh, J., entered a judgment after mediation. Subsequently, the defendants moved for clarification of the judgment after mediation with respect to the question whether their retention of ownership of fluid mineral and gas rights in the property included ownership of the underground storage space that would result from the extraction of the fluid mineral and gas from the property. The court, Deborah A. Servitto, J., held that the ownership of the underground storage space after the extraction of the fluid minerals and gas was in the surface owner, the plaintiff. The defendants appealed.

The Court of Appeals *held*:

Section 3 of the Uniform Condemnation Procedures Act, MCL 231.53; MSA 8.265(3), provides that fluid mineral and gas rights are excluded from a taking of property by condemnation by a government agency unless the instrument granting title to the agency specifically includes those rights. It is undisputed that the defendants retained ownership of the fluid mineral and gas rights to the property. The term "mineral right" is not defined in the statute, and, accordingly, is given its plain and ordinary meaning, which is an interest in the minerals in the land. Thus, a mineral right is a right to the minerals themselves, not a right to the land surrounding the minerals. Accordingly, the trial court properly concluded that the surface owner, in this case the plaintiff, possesses the right to the storage space created after the evacuation of the underground fluid mineral and gas.

Affirmed.

GAS AND OIL — CONDEMNATION — SUBSURFACE STORAGE.

> The rights to subsurface fluid minerals and gas remain with the party from whom property is taken in a condemnation proceeding brought pursuant to the Uniform Condemnation Procedures Act unless the instrument granting title to the government agency specifically includes those rights; however, the government agency that becomes the surface owner of property taken in a condemnation proceeding in any event acquires the right to any subsurface storage space created after the evacuation of any underground fluid minerals or gas (MCL 231.53; MSA 8.265[3]).

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *Marc G. Whitefield,* Assistant Attorney General, for the plaintiff.

*Eric G. Flinn,* for the defendant.

Before: SAWYER, P.J., and BANDSTRA and M. J. TAL-BOT,* JJ.

SAWYER, P.J. Defendants appeal from a judgment of the circuit court in favor of plaintiff in this mineral rights dispute. We affirm.

Defendants are the former owners of certain real property located in Washington Township in Macomb County. Plaintiff acquired the property in order to improve Highway M-53 and was granted title in fee simple. However, it is undisputed that, pursuant to MCL 231.53; MSA 8.265(3), defendants retained the "fluid mineral and gas rights" in the property.

The issue on appeal is, once the fluid minerals and gas have been extracted from the property, does the resulting underground storage space that held those fluid minerals and gas belong to the surface owner or to the owner of the mineral rights. We agree with the

---

* Circuit judge, sitting on the Court of Appeals by assignment.

trial court that the storage space, once it has been evacuated of the minerals and gas, belongs to the surface owner.

Section 3 of the Uniform Condemnation Procedures Act, MCL 213.53; MSA 8.265(3), provides that fluid mineral and gas rights are considered excluded when a government agency acquires an interest in land unless the instrument granting the land to the agency specifically includes those rights. It is undisputed that defendants retained the fluid mineral and gas rights when plaintiff acquired the property for the highway improvement project. At issue is whether the storage space is part of the mineral and gas rights. We conclude that it is not.

The statute does not define "fluid mineral and gas rights." Accordingly, we are to give the phrase its plain and ordinary meaning. *Great Lakes Sales, Inc v State Tax Comm*, 194 Mich App 271; 486 NW2d 367 (1992). Black's Law Dictionary (6th ed), p 995, defines "mineral right" as "[a]n interest in minerals in land, with or without ownership of the surface of the land. A right to take minerals or a right to receive a royalty." Therefore, a mineral right is a right to the minerals themselves, not to the land surrounding the minerals. That is, defendants retained only a right to the fluid minerals and gas themselves.

This is consistent with the decisions in other states. In *United States v 43.42 Acres of Land*, 520 F Supp 1042 (WD La, 1981), the court considered the rights to profits from the storage of oil in caverns created from the mining of salt. The court concluded that the mineral owner possesses no ownership interest in the subsurface strata containing the spaces where the minerals were found. *Id.* at 1046. Similarly, in *South-*

*ern Natural Gas Co v Sutton*, 406 So 2d 669, 671 (La App, 1991), the court held that surface ownership includes the right to use the reservoir underlying the surface for storage purposes.

In *Emeny v United States*, 412 F2d 1319 (Ct Cl, 1969), the defendant had obtained the gas rights to the plaintiffs' property. The land contained an underground dome that, in its natural state, had contained a deposit of natural gas. The defendant was using the dome for the storage of helium gas. The court concluded that the defendant had only the right to explore for and extract the minerals for which it had rights and that the plaintiffs retained all other rights, including the use of underground structures for use to store "foreign" or "extraneous" gas produced elsewhere. *Id.* at 1323.

In *Ellis v Arkansas Louisiana Gas Co*, 450 F Supp 412 (ED Okla, 1978), aff'd 609 F2d 436 (CA 10, 1979), the court noted that although the English and Canadian rule is that the owner of the mineral rights retains an interest in the cavern that remains after the extraction of underground minerals, the American view is that the cavern is owned by the surface owners.

Accordingly, we conclude that a surface owner possesses the right to the storage space created after the evacuation of underground minerals or gas.[1] While defendants may, of course, "store" any fluid minerals or gas native to the chamber that has not yet been extracted, they cannot introduce any foreign or extra-

---

[1] Plaintiff acknowledges that, as long as native fluid minerals or gas remain, it could not inject its own foreign minerals or gas into the chamber because it would be impossible to segregate plaintiff's gas from defendants' gas.

neous minerals or gas into the chamber. Only the surface owner, in this case plaintiff, possesses the right to use the cavern for storage of foreign minerals or gas, and then only after defendants have extracted the native gas from the cavern.

Affirmed. Plaintiff may tax costs.